UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>vs.<br><br>KENNETH D. RODGERS,<br><br>Movant. | No.  2:03-cr-0371-MCE-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant, Rodgers, is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  He was convicted of one count of robbery of a credit union, in violation of 18 U.S.C. § 2113; and one count of using a firearm in connection with that robbery, in violation of 18 U.S.C. § 924(c)(1).  He seeks post-conviction relief on the grounds alleging that: (1) the government failed to produce sufficient evidence that the credit union was federally insured at the time of the robbery; (2) the trial court lacked subject matter jurisdiction because of the government's failure to prove that the credit union was federally insured at the time of the robbery; (3) his Sixth Amendment right to confrontation was violated when out of court, unsworn statements were admitted to show that the credit union was an insured depository; (4) his trial and appellate counsel rendered ineffective assistance in failing

---

[1] This motion was assigned, for statistical purposes, the following civil case number: No. 2:11-cv-2782-MCE-EFB P.

to object to the lack of evidence that the credit union was federally insured; (5) the cumulative effect of errors at his trial violated his right to due process; (6) his trial was held in violation of his right to a speedy trial; and (7) the prosecutor failed to turn over exculpatory evidence to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Rodgers also requests an evidentiary hearing on his claims of ineffective assistance of counsel and *Brady* error.

Upon careful consideration of the record and the applicable law, the court finds that Rodger's § 2255 motion must be denied.

**I.      Procedural Background**

On September 1, 2005, the grand jury returned a Fifth Superseding Indictment charging Rodgers with two counts (counts 11 and 17) of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); and two counts (counts 12 and 18) of using a firearm, within the meaning of 18 U.S.C. § 924(c)(1). ECF No. 260. Rodgers' jury trial commenced on January 18, 2006. ECF No. 312. On February 14, 2006, the jury found Rodgers guilty on counts 11 and 12 but acquitted him on counts 17 and 18. ECF No. 366. On April 25, 2006, Rodgers was sentenced to 300 months (25 years) on count 11 and 84 months (7 years) on count 12, to run consecutively, for a total aggregate sentence of 384 months (32 years) in prison. ECF No. 419.

Rodgers filed an appeal of his judgment of conviction in the United States Court of Appeals for the Ninth Circuit. ECF No. 416. Therein, Rodgers claimed that: (1) the prosecutor improperly vouched for the government's cooperating witnesses and made other inflammatory statements during closing argument; (2) the district court erred in permitting the government to present the direct testimony of three cooperating witnesses without allowing immediate cross-examination of each witness; (3) the government's delay in providing Jencks Act material prevented the defendants from effectively cross-examining the cooperating witnesses; (4) the district court erroneously denied the defense request for a hearing to determine whether the government made promises to prosecution witness Dakina Sudduth in exchange for her testimony; (5) the trial court erred in denying a defense request for a perjury instruction as it applied to one of the cooperating witnesses; and (6) the cumulative effect of errors at his trial violated his right to due process. *United States v. Williams, et al.,* 375 F. App'x 682 (9th Cir.

2010).  The Ninth Circuit upheld Rodgers' conviction and sentence in a memorandum decision filed April 8, 2010.  *Id.*

Rodgers filed the instant motion pursuant to 28 U.S.C. § 2255 on October 31, 2011.  ECF No. 855.  Respondent filed an opposition on October 18, 2012.  ECF No. 903.  Rodgers filed a reply on December 7, 2012.  ECF No. 914.

## II.  Applicable Law

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States.  *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted).  To warrant a hearing, therefore Rodgers must make specific factual allegations which, if true, would entitle him to relief.  *Id.*  Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing.  *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

/////

### III. Rodgers's Claims

#### A. Insufficient Evidence

Rodgers was charged with and convicted of the robbery of Financial Center Credit Union in Manteca, California (FCCU), in violation of 18 U.S.C. 2113(a). One of the elements of the robbery of FCCU as alleged in the indictment requires proof beyond a reasonable doubt that FCCU was a federally-insured financial institution at the time of the robbery. *See* 18 U.S.C. § 2113(f) ("the term 'credit union' means any Federal credit union and any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board.") The indictment against Rodgers alleged that the "accounts" of FCCU were insured at the time of the robbery by the National Credit Union Administration Board. ECF No. 260 at 7.

Rodgers' first claim is that there was insufficient evidence to support his conviction for the robbery of FCUU because the government failed to demonstrate that the "deposits" of the credit union were federally insured. ECF No. 855 at 14-18. The background to this claim is the following.

At trial the government presented unchallenged evidence showing that the FCCU was federally insured, as alleged in the indictment. This evidence included testimony by Nora Stroh, Executive Vice-President of FCCU, who testified that FCCU was "federally insured" on the day of the robbery. Reporter's Transcript of Proceedings (RT) at 273-75. The government also introduced as evidence a National Credit Union Administration certificate of insurance and accompanying letter, which were identified by Ms. Stroh as such, and which provided support for her testimony that the credit union was a federally insured institution on the date of the robbery. *Id.* The certificate of insurance, which is dated July 2, 1971, states that "each member's shares" in FCCU are insured. It does not mention "deposits." ECF No. 855 at 30. Finally, the government introduced a certification dated July 6, 2005, and signed by Kelly J. Frerichs, the Director of Division of Insurance Region V of the National Credit Union Administration. Therein, Mr. Frerichs certified that the certificate of insurance correctly set forth the insured status of FCCU as of July 2, 1971, and that a search of relevant records found no evidence that FCCU's insured status had been terminated after that time. ECF No. 855 at 32.

Rodgers concedes that the government demonstrated the "member shares" of FCCU were federally insured and that FCCU as an entity was federally insured on the date of the robbery. But he insists that it does not follow from this that "deposits" with FCCU were federally insured. Thus, he argues that the evidence introduced by the government is insufficient to prove the required element that the FCCU's deposits were federally insured. ECF No. 855 at 14-18; ECF No. 914 at 10. In support of his argument that the government was required to prove FCCU's "deposits" were insured, as opposed to its "accounts" being insured, Rodgers notes that his jury was given the following instruction:

> The defendants are charged in the Fifth Superseding Indictment with armed credit union robbery in violation of Section 2113 of Title 18 of the United States code. In order for a defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt: First, a defendant took money belonging to a financial institution. Second, a defendant used force and violence or intimidation in doing so. Third, *the deposits* of the financial institution were then insured by the National Credit Union Administration . . .

RT, Monday, January 29, 2007, at 1176-77 (emphasis added). Rodgers argues, "no rational trier of fact could have found beyond a reasonable doubt that the 'deposits' rather than the 'member's shares' of the FCCU in Manteca, California were federally insured." ECF No. 855 at 18.

Respondent addresses this semantic exercise by pointing out that "member shares means the same as 'deposits' for federally insured purposes," and that the element of federal insurance was proved at Rodgers's trial by the evidence described above. ECF No. 903 at 21. The point is well-taken. It is the insured status of the money placed in the members accounts, not the label used to refer to that money which matters for this element. Regardless of the nomenclature to describe the money credit union members placed in their FCCU accounts, that money was federally insured and this element of the offense is satisfied.

Respondent also argues that Rodgers' claim of insufficient evidence has been procedurally defaulted. *Id.* at 23. Rodgers did not raise a claim of insufficient evidence on direct appeal. In *Bousley v. United States*, 523 U.S. 614, 622 (1998), the United States Supreme Court held, in the context of a § 2255 motion, that "where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first

demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" This is because "habeas review is an extraordinary remedy and 'will not be allowed to [serve] for an appeal.'" *Id.* at 621 (citation omitted). Accordingly, "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." *United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007).

Cause may be based on "some objective factor external to the defense [that] impeded counsel's efforts to comply with the . . . procedural rule . . . ." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Cause may also be established by attorney error that rises to the level of constitutionally ineffective assistance of counsel. *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003). Independent claims of ineffective assistance of counsel, and claims that "could not be presented without further factual development" are excluded from the cause and prejudice requirement and may be heard on collateral review, even though the defendant could have, but did not raise the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 505 (2003).

Any claim that Rodgers' federal constitutional rights were violated by the government's failure to establish an element of the crime beyond a reasonable doubt is barred pursuant to the rule announced in *Bousley*. With respect to that claim, the record was fully developed on direct appeal and no further factual development was necessary.

Rodgers argues that his trial and appellate counsels' ineffective assistance in failing to challenge the sufficiency of the evidence to support his conviction for the robbery of FCCU constitutes cause for his default.

In *Ratigan*, as here, the petitioner argued that the ineffectiveness of his trial counsel in failing to recognize and object to the insufficiency of proof offered by the government to prove that the bank he was charged with robbing was federally insured constituted cause for his default. The Ninth Circuit disagreed, stating:

> His counsel's failure to recognize every possible legal argument, including the arguably insufficient proof offered by the government as to one element of the crime, does not, however, constitute cause. "[T]he mere fact that counsel failed to recognize the factual or legal basis for the claim, or failed to raise the claim despite recognizing

6

> it, does not constitute cause for a procedural default (citations omitted). We do not find that counsel's conduct included 'errors so serious as to deprive [Ratigan] of a fair trial' (citation omitted).

*Ratigan*, 351 F.3d at 965. Similarly here, this court concludes that the failure of Rodgers' trial counsel to object to the government's alleged failure to prove that the credit union's "deposits" were federally insured does not demonstrate cause to overcome Rodgers' procedural default of his claim of insufficient evidence. Trial counsel's failure to object to the federally insured status of FCCU did not deprive Rodgers of a fair trial. Accordingly, his claim of insufficient evidence is barred in this § 2255 proceeding. *Bousley*, 523 U.S. at 622.

Rodgers also raises an independent claim that his trial and appellate counsel rendered ineffective assistance in failing to challenge the sufficiency of the evidence to support his conviction of the robbery of FCCU. These claims are not barred by *Bousley* and are addressed below. *Massaro*, 538 U.S. at 505.

### B. Subject Matter Jurisdiction

Rodgers' argument in his second claim for relief varies only slightly from his first. He asserts that the trial court lacked subject matter jurisdiction because of the government's failure to prove that the "deposits" of the FCCU were federally insured. ECF No. 855 at 19. As a threshold matter, Rodgers failed to raise this claim on direct appeal. However, he argues that "an issue of a jurisdictional magnitude can never be considered waived nor considered procedurally barred." *Id.* In essence, Rodgers is attempting to avoid procedural default of his claim of insufficient evidence by arguing that his claim is essentially a challenge to the subject matter jurisdiction of the trial court. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"). The argument is foreclosed by *Ratigan*.

In *Ratigan*, as here, the petitioner argued that the trial court lacked subject matter jurisdiction because the government had failed to demonstrate that the bank he was accused of robbing was federally insured. He asserted that his claim was a challenge to the jurisdiction of the trial court as opposed to a challenge to the sufficiency of the evidence. 351 F.3d at 962. The

Ninth Circuit disagreed, holding that a bank's federally insured status is merely an element of the crime and does not affect the court's subject matter jurisdiction. *Ratigan*, 351 F.3d at 963-64. The appellate court explained, "[b]ecause proof of FDIC insurance is an element of the crime of bank robbery under 18 U.S.C. § 2113, we conclude that any challenge claiming that the government failed to prove at trial that essential element does not thereby undermine the court's subject-matter jurisdiction, or its power to hear the case." *Id.* at 964. As a result, the court concluded that Ratigan's claim was barred by procedural default. *Id.*

*Ratigan* controls here and based on it, Rodgers' argument that the trial court lacked subject matter jurisdiction over his trial does not excuse his procedural default of his claim of insufficient evidence. In short, Rodgers' claim of insufficient evidence is barred by procedural default.

**C. Sixth Amendment Right to Confrontation**

In his next claim for relief, Rodgers argues that his Sixth Amendment right to confrontation of the witnesses against him and his Fourteenth Amendment rights to due process and a fair trial were violated when the trial court admitted into evidence the certification of insurance signed by Kelly J. Frerichs, described above, without allowing Rodgers an opportunity to cross-examine Mr. Frerichs. ECF No. 855 at 20-23. He argues that his failure to raise this claim on direct appeal is excused by his trial counsel's "clear ineffectiveness for failing to object, argue and adequately litigate this critical violation." *Id.* at 20. Rodgers also argues that the certificate of insurance was "an apparent fraud," because (1) it established only that FCCU's "member's shares" were federally insured, as opposed to its "deposits;" (2) the testimony of prosecution witness Nora Stroh established only that the FCCU, as an institution, was federally insured "rather than its deposits;" and (3) the certificate established that the main Stockton office of the FCCU was insured but said nothing about the Manteca branch, which Rodgers was accused of robbing. *Id.* at 21-22.

Rodgers has procedurally defaulted any claim that the admission into evidence of the certificate signed by Kelly Frerichs violated his Sixth Amendment right to confront the witnesses against him. The failure of Rodgers' trial and appellate counsel to object to the admission into

8

1  evidence of the certificate on Sixth Amendment and due process grounds does not demonstrate

2  cause to overcome the procedural default. *Ratigan*, 351 F.3d at 965.  Even if it did, Rodgers is

3  not entitled to relief on these claims.

4  Assuming arguendo that the admission into evidence of the certificate of insurance

5  violated the Confrontation Clause, any error was harmless. *See Forn v. Hornung*, 343 F.3d 990,

6  999 (9th Cir. 2003) (violations under the Confrontation Clause are subject to harmless error

7  analysis); *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (same).  In the Ninth

8  Circuit, "the uncontradicted testimony of a ranking official of the institution is sufficient to

9  establish that the institution is federally insured." *United States v. Phillips*, 606 F.2d 884, 887

10  (9th Cir. 1979) (credit union manager's uncontradicted testimony sufficient to establish that credit

11  union was federally insured). *See also United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir.

12  1993) ("this Circuit has repeatedly held a certificate of insurance, or testimony by a bank agent

13  regarding the existence of a certificate, to be sufficient evidence, without ever questioning its

14  admissibility"); *United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) ("We have held that

15  bank employees' uncontradicted testimony of a bank's insured status can sufficiently support the

16  jury's conclusion that this element was proven beyond a reasonable doubt"); *United States v.

17  Priest*, 967 F.2d 595, *1 (9th Cir. 1992) (unpublished disposition) (testimony from bank officials

18  of each bank that the banks were federally insured was sufficient); *United States v. Hampton*, 464

19  F.3d 687, 688 (7th Cir. 2006) ("The bank employees who testified about their banks' insured

20  status testified that the banks were currently insured, and the jury was entitled to believe their

21  testimony"); *United States v. Lovellette*, 472 F. App'x 593 (9th Cir. 2012) (testimony of internal

22  auditor at credit union and certificate by the National Credit Union Administration sufficient to

23  establish that credit union was federally insured).

24  Nora Stroh testified without objection that FCCU was federally insured at the time of the

25  robbery.  Specifically, she testified as follows:

26  Q: Ms. Stroh, can you tell us by whom you are employed?

27  A: Financial Center Credit Union.

28  Q: And how long have you been employed by that credit union?

9

> A: February 1990.
>
> Q: And were you so employed on the 3rd day of September, 2003?
>
> A: Yes, I was.
>
> Q: On that particular day, where were you working?
>
> A: At the Manteca branch.
>
> Q: That's in Manteca, California?
>
> A: Correct.
>
> Q: Now what was your title back then?
>
> A: Executive vice-president.
>
> Q: So as the executive vice-president, you're aware of whether or not the credit union, the Financial Center Credit Union, is federally insured; is that correct?
>
> A: Yes.
>
> Mr. Wong (the prosecutor): May I approach, Your Honor?
>
> The Court: You may.
>
> By Mr. Wong: Let me show you Government's 14. What is that?
>
> A: That's our Certificate of Insurance.
>
> Q: And Government's 22, what is that?
>
> A: That is a letter that went with the Certificate of Insurance to provide proof that we were insured.
>
> Q: So if I asked you today, on September 3rd, 2003 was the credit union federally insured, what would your answer be?
>
> A: Yes.

RT of proceedings on Jan. 11, 2007, at 273-75. Under established Ninth Circuit law, the testimony of Ms. Stroh, an officer of the credit union, was sufficient to establish that FCUU was federally insured at the time of the robbery. Accordingly, any error in allowing the admission into evidence of the certificate of insurance without allowing Rodgers to cross-examine Frerichs was harmless.

/////

/////

### D. Ineffective Assistance of Counsel

Rodgers' fourth claim for relief returns to his theme that money customers placed into account at FCCU were shares and not deposits. With that underlying predicate, he claims that his trial and appellate counsel rendered ineffective assistance in failing to challenge the sufficiency of the evidence that FCCU was federally insured at the time of the robbery. ECF No. 855 at 23-24. Rodgers did not raise these ineffective assistance claims on direct appeal. However, as noted above, claims of ineffective assistance of counsel are excluded from the cause and prejudice requirement and may be heard on collateral review even though the defendant could have, but did not raise the claim on direct appeal. *Massaro*, 538 U.S. at 505.

In order to demonstrate ineffective assistance of counsel, Rodgers must show that: (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88. (quoting *Strickland*, 466 U.S. at 687). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Rodgers argues that his trial and appellate counsel were ineffective by failing to challenge his conviction on the basis that shares are not deposits and therefore the government failed to prove that FCCU was federally insured at the time of the robbery. The Due Process Clause requires the government to prove each element of the charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). As discussed above, the government did so as to the federally insured status element.

Further, Rodgers has not cited in support of his semantics argument any case holding that an essential element of the offense of robbery of a credit union is that the "deposits" of the credit union be federally insured. In this regard, 18 U.S.C. § 2113(f) defines a "bank" as "any member

11

bank of the Federal Reserve System, and any bank . . . the *deposits* of which are insured by the Federal Deposit Insurance Corporation" (emphasis added). However, the FCCU is not a "bank" and was not defined as such in the indictment. Rodgers was charged with robbing a credit union. Title 18 U.S.C. § 2113(g) provides that: "the term 'credit union' means any Federal credit union and any State-chartered credit union the *accounts* of which are insured by the National Credit Union Administration Board." Pursuant to this code section, the indictment in this case alleged that the "accounts" of FCCU were insured by the National Credit Union Administration Board, not its "deposits." ECF No. 260 at 7. The government proved beyond a reasonable doubt that the accounts of FCCU were federally insured at the time of the robbery through the testimony and evidence at Rodgers' trial, including the testimony of Nora Stroh.

The failure of Rodgers' trial and appellate counsel to raise a claim that the evidence was insufficient to prove the FCCU was federally insured did not constitute an error; let alone error "so serious as to deprive [movant] of a fair trial." *Strickland*, 466 U.S. at 687. An attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel. *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag*, 769 F.2d at 1344). *See also Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); *Matylinsky v. Budge*, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to testimony on hearsay grounds not ineffective where objection would have been properly overruled), *cert. denied* ___U.S.___, 130 S. Ct. 1154 (2010); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

In addition, with regard to appellate counsel, Rodgers did not have a constitutional right to compel his appointed appellate counsel to press nonfrivolous points when that counsel, as a matter of professional judgment, decided not to present those issues. *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983) (an experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"). "A brief that raises every colorable issue runs the risk of burying good arguments." *Id.*

at 753. Here, Rodgers' appellate counsel raised numerous claims on appeal with more merit than a claim attacking the federally insured status of FCCU. This court presumes that appellate counsel exercised his professional judgment to raise the issues on appeal that he considered to be the most meritorious.

Rodgers has not shown that the failure of his trial and appellate counsel to challenge the sufficiency of the evidence to demonstrate that FCCU was federally insured on the date of the robbery constituted either deficient performance or prejudice.

### E. Cumulative Error

Rodgers continues to press his shares-are-not-deposits leitmotif in his next claim for relief. He argues that the cumulative effect of the errors at his trial violated his right to due process and those errors include: (1) insufficient evidence that FCCU was federally insured at the time of the robbery; (2) trial counsel's failure to object to "impermissible vouching by the prosecutor during closing arguments;" (3) trial counsel's failure to object to inflammatory statements made by the prosecutor during his closing argument; and (4) trial counsel's failure "to move for a mistrial after improper closing argument by prosecutor or request curative instructions, etc." ECF No. 855 at 25-26.

The cumulative error doctrine in habeas recognizes that, "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'" *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)). In the absence of a specific constitutional violation, habeas review of trial error is limited to whether the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A habeas court may not grant the writ on the basis of errors of state law whose combined effect does not violate the Federal Constitution. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). "The fundamental question in determining whether

the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

This court has addressed and disposed of Rodgers' claims of error regarding the sufficiency of the evidence to show that FCCU was federally insured at the time of the robbery. Rodgers' claims that his trial counsel failed to object to prosecutorial misconduct were raised by Rodgers on direct appeal and found to lack merit. *United States v. Williams, et al.,* 375 F. App'x 682 (9th Cir. 2010). This court also concludes that these alleged errors, even when considered together, did not render Rodgers' trial fundamentally unfair. Because Rodgers has failed to demonstrate that an accumulation of errors rendered his trial fundamentally unfair, he is not entitled to relief on his claim that cumulative error violated his right to due process.

**F.  Speedy Trial**

Rodgers' next claim is that delay in bringing his case to trial violated the provisions of the Speedy Trial Act and his Sixth Amendment right to a speedy trial. ECF No. 855 at 26-27. As noted above, Rodgers was prosecuted under a Fifth Superseding Indictment. He argues in a somewhat vague fashion that the filing of multiple superseding indictments "does not 'toll' the clock for offenses charged in the original indictment." *Id.* at 26. He advises that "delays approaching one year [are deemed] to be presumptively prejudicial." *Id.* Rodgers also argues that his trial counsel's failure to file a motion to dismiss the indictment on speedy trial grounds constituted "deficient performance." *Id*. He contends that had his trial counsel filed such a motion, "dismissal would have been a virtual certainty." *Id.* at 27.

Respondent counters that Rodgers' allegations are too conclusory to allow for a specific response. ECF No. 903 at 28-29. Respondent also argues that the docket reflects that any delay in the start of Rodgers' trial was caused by defense requests for a trial continuance.[2] *Id.*

---

[2] This is perhaps why respondent does not address Rodgers' claim that his trial counsel rendered ineffective assistance in failing to file a motion to dismiss the indictment on speedy trial

14

Respondents states, "nowhere in the defendant's argument does he claim that the government was responsible for any delay in the trial nor can it be found in the court docket." *Id.* at 28. Finally, respondent argues that Rodgers has procedurally defaulted this claim.

In reply, Rodgers argues that because his trial commenced "some two plus years after indictment," his right to a speedy trial was presumptively violated. ECF No. 914 at 20. He contends that the government was at fault for the delay because it returned "superseding Indictment upon superseding Indictment until finally securing Rodgers' conviction upon a Fifth Superseding Indictment." *Id.*

Assuming arguendo that Rodgers' speedy trial claim is not procedurally barred, it must be denied on the merits. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. CONST. amend. VI. In assessing a speedy trial claim, the court must weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). *See also McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003); *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986). No one of these four factors alone is either necessary or sufficient to support a finding that there has been a deprivation of the constitutional right to a speedy trial. *McNeely*, 336 F.3d at 826. Rather, the various factors are related and must be considered together. *Barker*, 407 U.S. at 533. However, "no showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). *See also Doggett*, 505 U.S. at 651 (eight and one-half year delay between indictment and trial, six of which were attributable to the government's negligence, violated a defendant's constitutional right to a speedy trial even though he could not demonstrate the delay impaired his ability to mount a successful defense).

/////

---

grounds.

The Supreme Court has observed:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530. In this regard, depending on the nature of the charges, courts have generally found post-accusation delay "presumptively prejudicial" when it begins to approach one year. *Doggett*, 505 U.S. at 652, n.1; *see also McNeely*, 336 F.3d at 826 (three-year delay was presumptively prejudicial); *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long); *United States v. Aguirre*, 994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long enough to trigger a further look," but concluding that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all the *Barker v. Wingo* factors were balanced).

The Speedy Trial Act provides that trial shall commence no later than seventy days from the filing of the indictment or the defendant's first appearance in court, whichever is later, unless time is excluded from the calculation for various reasons such as filing and deciding pretrial motions. 18 U.S.C. § 3161(c)(1) (timeline); *id.* § 3161(h) (list of excludable periods of delay). The Speedy Trial Act mandates dismissal of the indictment upon defendant's motion if the seventy day limitations period is exceeded. 18 U.S.C. § 3162(a)(2). *See also United States v. Morales*, 875 F.2d 775, 777 (9th Cir. 1989). The failure of the defendant to move for dismissal prior to trial constitutes a waiver of the right to dismissal under this section. 18 U.S.C. § 3162(a)(2). *See also United States v. Medina*, 524 F.3d 974, 980 (9th Cir. 2008) (citing 18 U.S.C. § 3162(a)(2)) ("If the defendant is not brought to trial within the 70–day period mandated by the Speedy Trial Act (subtracting all properly excludable periods of delay), then the defendant may move for a dismissal of the indictment.").

/////

In a case with co-defendants, the "speedy trial clock starts running after the indictment or arraignment (whichever comes last) of the last defendant." *United States v. Daychild*, 357 F.3d 1082, 1090 (9th Cir. 2004). *See also Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant"). "[A]ny calculation affecting one defendant applies to the other, [if] neither defendant filed a motion for severance." *Daychild*, 357 F.3d at 1091. Resetting the clock upon the return of a superseding indictment against a new defendant synchronizes the original defendant with the newly-joined defendant. *United States v. King*, 483 F.3d 969, 973–74 (9th Cir. 2007).

Rodgers provides no specific factual support for his claim that delay in bringing his case to trial violated the Sixth Amendment or the Speedy Trial Act. His general allegations that the filing of multiple superseding indictments demonstrates bad faith, or results in a per se violation of his right to a speedy trial, is insufficient to support this claim. There is no evidence in this case that the government acted in bad faith in bringing Rodgers to trial. With respect to the Sixth Amendment, Rodgers has not demonstrated any of the four relevant factors. Specifically, the delay between his indictment and trial was not uncommonly long, there is no evidence the government was more to blame for any delay, Rodgers did not assert his right to a speedy trial, and he did not suffer prejudice as the result of delay. *Doggett*, 505 U.S. at 651.

The court notes that Rodgers was not charged until the fourth superseding indictment, which was filed on December 23, 2004. ECF No. 125. Rodgers' trial commenced on January 18, 2006, just a little over one year later. On February 8, 2005, several defense counsel, including Rodgers' counsel, requested an exclusion of time from deadlines imposed by the Speedy Trial Act. ECF No. 150. The Fifth Superseding Indictment, filed on September 1, 2005, added three new defendants. ECF No. 260. With those additions, the speedy trial clock started running after the indictment or arraignment of the last defendant. *Daychild*, 357 F.3d at 1090. Finally, Rodgers did not file a motion for dismissal prior to trial and accordingly waived his right to dismissal under the Speedy Trial Act. Indeed, Rodgers has failed to point to anything in the

/////

record showing any defense counsel objected to the length of any delay or raised any objections based on the right to a speedy trial.

There is no evidence in this case that the trial date was continued over the objection of Rodgers' counsel or any other defense counsel. There is also no evidence that any delay in bringing Rodgers' case to trial was for any improper purpose or that the prosecution improperly sought to lengthen the proceedings against Rodgers. *Cf. United States v. Marion*, 404 U.S. 307, 325 (1971) (it would be improper for the prosecution to intentionally delay in order "to gain some tactical advantage over [defendants] or to harass them"); *McNeely*, 336 F.3d at 827 ("deliberate attempt to delay proceedings to hamper the defense counts heavily against the government"). Nor is there any evidence that the filing of superseding indictments was an attempt by the government to manipulate any deadlines contained in the Speedy Trial Act or to lengthen the time before trial for any improper purpose.

A review of the case docket reflects that numerous discussions were held in open court among all defendants regarding continuances of the trial date for various reasons. It appears that all such delays resulted from either case complexity or agreement of counsel on all sides, including Rodgers' counsel that additional time was necessary. *See United States v. Lam*, 251 F.3d 852, 861 n.11 (9th Cir. 2001) (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972) (a defendant's failure to assert the right and his acquiescence in the delay are speedy trial factors)). It appears the government and the trial court acted with reasonable diligence to bring this matter to trial. The court also notes that collateral relief in a § 2255 motion "'is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error." *Davis*, 417 U.S. at 346. At most, that appears to be the case here.

Because Rodgers has failed to show any violation of his right to a speedy trial, he has also failed to demonstrate either deficient performance or prejudice on the part of his trial counsel in failing to raise an objection at trial on speedy trial grounds. Accordingly, Rodgers is not entitled to relief on these claims.

/////

**G. *Brady* Claim**

In his last ground for relief, Rodgers claims that the prosecutor failed to turn over exculpatory evidence to the defense, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). ECF No. 855 at 27. Specifically, Rodgers argues that the prosecutor "failed to disclose to the defense any deals rendered to Dakina Sudduth as compensation for her testimony before or after trial." *Id. See Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (holding that an undisclosed deal with a key prosecution witness was a material non-disclosure). Rodgers raised this claim unsuccessfully on direct appeal. *United States v. Williams, et al.*, 2010 WL 1417931 at *3.

The Ninth Circuit's holding on Rodgers' *Brady* claim is the law of the case. The law of the case doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotation and citation omitted)). A court may have discretion to depart from the law of the case if: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *Alexander*, 106 F.3d at 876. None of these exceptions to the law of the case doctrine exist in this case. Accordingly, Rodgers is not entitled to relief on this claim.

**H. Evidentiary Hearing**

Rodgers requests an evidentiary hearing on his claims of ineffective assistance of counsel and on his *Brady* claim. ECF No. 855 at 27-28; ECF No. 914 at 22. That request must be denied. Rodgers' allegations, viewed against the record, fail to state a claim for relief. Further, the files and records of this case conclusively show that Rodgers is entitled to no relief. *Blaylock*, 20 F.3d at 1465. Accordingly, there is no need for an evidentiary hearing on Rodgers' claims.

/////
/////
/////
/////

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Rodgers' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections Rodgers may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  April 30, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE